HARDY, Judge.
Pursuant to the provisions of LRS 23:1331 defendant instituted this proceeding by rule, praying that the judgment in favor of plaintiff as for total permanent disability be modified and cancelled and further compensation payments be terminated. From judgment dismissing the rule the defendant, plaintiff-in-rule, brings this appeal.
On appeal by both plaintiff and defendant this case was before this court and judgment was rendered in favor of plaintiff as for total permanent disability, together with other relief; Funderburk v. Southwestern Iron Corporation (2nd Cir., 1965, writs refused), 180 So.2d 4. The material facts, which are also pertinent to consideration of this appeal, are fully set forth in the opinion in the cited case and will not be repeated except to such extent as may be essential.
The petition of plaintiff-in-rule alleged the termination of plaintiff’s incapacity and disability on the ground that he was, and had been for a period of months, regularly employed in the performance of hazardous and strenuous duties.
After careful examination of the record made up pursuant to the trial of the rule, we are of the opinion that this case is one which could and probably should be disposed by the simple observation that the contentions, claims and relief sought by plaintiff-in-rule are completely without merit. However, in deference to the requirements imposed upon the court which *777 necessitate an opinion setting forth the reasons for judgment, we proceed with a delineation of such reasons.
We first set forth with complete approval the opinion of our learned brother of the district court as follows:
“Johnnie Funderburk had his left arm amputated below the elbow. He was injured and had the middle finger of his remaining hand amputated when working for the defendant. The case was tried last spring. The Court of Appeal found that he was not merely totally and temporarily disabled, as the trial court had concluded, but was totally and permanently disabled.
“While Johnnie was nursing his sore hand last summer, the manager of an oilfield specialty manufacturing concern, whose plant was next door to the house where Johnnie lived with his seven children and pregnant wife, offered Johnnie a job out of compassion. Johnnie could not accept the job at first because his hand still hurt too much. When his hand healed sufficiently, Johnnie went to work at $1.50 an hour, and has worked as regularly as he could since then. His present pay is $1.70 an hour — - much more than he ever made while cleaning automobile motor blocks for the defendant on a piece-work basis.
“The defendant brings this rule to have the case re-opened, and to obtain a declaration that Johnnie is no longer totally and permanently disabled.
“If there is one thing the evidence in this case does, it convinces us of the wisdom and perspicacity of the Court of Appeal in holding that Johnnie was totally and permanently disabled. We find, without a shadow of a doubt, that he is now totally and permanently disabled within the meaning of the Workmen’s Compensation Statute. Three people testified about Johnnie’s work — Johnnie, his employer, and Mr. Lewis, a fellow employee. Their testimony is uncon-troverted and in agreement concerning' the nature of the tasks performed by Johnnie. Mr. Lewis said: ‘A child could do his work; my child has done his work/
“The work described was: Johnnie screwed a plastic thread protector on the end of a 30-pound sucker rod; two men lifted the sucker rod onto a stand; Johnnie inserted a pin in a hole near the end of the sucker rod; Johnnie punched a button that operated a hoist; Johnnie assisted in disassembling the attachments he had placed on the sucker rod after the rod had been sandblasted and painted in some automated machinery.
“Johnnie could not and was not allowed to perform other tasks incidental to this operation. He was not allowed to carry the 50-pound sacks of sand to load the sandblasting machine. He was not allowed to handle the containers of paint in loading the painting machine. His employer had attempted to teach him to operate the banding and welding machine, but had failed because Johnnie did not have enough strength in his remaining hand to manipulate the machine.
“The testimony satisfies the Court that Johnnie is willing, but unable. His employer and his fellow workers assist him. He holds his job by sufferance, and not because he is able to do work of a reasonable nature. There is no evidence in the record to indicate that Funderburk could return to work in a filling station using tools to change tires, nor to his former occupation in the defendant’s scrap yard.”
In addition to the analysis of the case as above quoted, we think it desirable to point out the fact that the medical testimony on trial of the rule was given by Dr. Ray E. King, an orthopedic specialist who was appointed by the Court in accordance with the prayer of the petition of plaintiff-in-rule, and Dr. Edmond C. Simonton, also an orthopedic specialist, both of whom had testified on the original trial of this case. Both of these experts testified that the ex- *778 animations of plaintiff made before trial of this rule disclosed no essential difference in plaintiff’s condition from that which existed at the time of the original trial. The only change, according to the testimony of these witnesses, was the improvement in tissue of the amputated stump of plaintiff’s finger, the absence of tenderness and a ■slight improvement in the strength of the hand. There was no difference of opinion between the doctors as to the conclusion that plaintiff’s hand was not normal; that he •could not extend the stump of the amputated finger, nor close the other fingers into the ,palm of the hand.
We cannot perceive the slightest justification for a modification of the judgment .of total permanent disability.
/■' For the reasons assigned the judgment ' appealed from is affirmed at the cost of defendant-appellant.